Of Counsel:
NING LILLY & JONES

MICHAEL A. LILLY    1681
STEPHEN A. JONES    2957
707 Richards Street, Suite 700
Honolulu, HI 96813
Telephone: (808) 528-1100
Facsimile: (808) 531-2415
Email: Michael@nljlaw.com

Special Counsel for Plaintiff
RONALD K. KOTOSHIRODO, Chapter 7 Trustee

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re:<br><br>JAMES WILLIAM LULL,<br><br>    Debtor. | ) BK. NO. 06-00898<br>) (Chapter 7)<br>)<br>)<br>) |
| RONALD K. KOTOSHIRODO,<br>CHAPTER 7 TRUSTEE<br><br>    Plaintiff<br><br>v.<br><br>GINA ZAPARA<br><br>    Defendant. | ) ADV. NO. 08-90074<br>)<br>) FINDINGS OF FACT AND<br>) CONCLUSIONS OF LAW<br>)<br>)<br>)<br>)<br>) HEARING:<br>) Date:  October 29, 2009<br>) Time:  9:30 a.m.<br>) Judge: Honorable Lloyd King |

FINDINGS OF FACT AND CONCLUSIONS OF LAW

This is an adversary proceeding in bankruptcy. Fed.R.Bankr.P. 7001(6).

Plaintiff Ronald K. Kotoshirodo, Chapter 7 Trustee ("Plaintiff") seeks summary

judgment in his favor against Defendant Gina Zapara ("Zapara") on the grounds that there is no genuine issue as to any material fact and that Plaintiff is entitled to summary judgment, as requested, as a matter of law.

This matter came before the Honorable LLOYD KING on October 29, 2009 on Plaintiff's Rule 56 Motion for Partial Summary Judgment Against Defendant Gina Zapara filed on August 13, 2009 (the "Motion"). Appearing was Michael A. Lilly, Esq., Ning, Lilly & Jones, representing Plaintiff. Although duly noticed, Defendant did not file an opposition to the Motion or appear at the hearing. Having considered the arguments of counsel, the evidence submitted by Plaintiff, the records and files in this case, and for the reasons stated in open court, the Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. This is an action to avoid the transfer of funds of the Debtor under 11 USCA §§ 547(b), and is brought as an adversary proceeding in accordance with Bankruptcy Rule 7001, et seq.

2. On December 8, 2006, James William Lull, also known as James W. Lull, (the "Debtor") filed a Voluntary Petition under Chapter 7, in the United States Bankruptcy Court for the District of Hawai'i.

3. Plaintiff was appointed as Bankruptcy Trustee for the Debtor on December 8, 2006 and Notice of Appointment was filed on December 12, 2006.

4. At all times relevant herein, Defendant Gina Zapara ("Zapara") was a resident of the State of Hawai`i.

5. During the year preceding Debtor's Voluntary Petition, Debtor made the following transfers to Zapara: $5,000 on about December 12, 2005; $10,000 on December 20, 2005; $100,000 on December 23, 2005 by way of two checks; $50,000 on January 24, 2006; and $5,100 on November 11, 2006 via Zapara's "Happylandkauai" business by a charge on Debtor's Mastercard (the "Transfers").

6. Zapara admitted that the Transfers "were made by the Debtor to Zapara or for Zapara's benefit" (Answer, ¶ 7) and that Debtor owed her $300,000 on two outstanding loans (Answer, ¶ 5).

7. Zapara had a close personal and financial relationship with Debtor:

   a. Debtor and Zapara have known one another since 2000.

   b. The Zaparas initially saw Debtor to obtain a loan on their residence.

   c. In 2004 or 2005, Debtor and Zapara co-invested in a company ("Cash-to-Trade") that preloaded credit cards for people without a bank account. Zapara was "short" and needed $250,000 which Debtor advanced. By Debtor's investment in the company, Gina's husband Michael Zapara was given a job which Debtor testified "would be really good for them and their family".

3

d. Debtor "chipped" in with monthly funds to help Michael Zapara with the federal probation department. Michael and Gina Zapara had been convicted of tax fraud and, while on supervisory release, Michael had to prove he was gainfully employed.

e. Debtor invited Zapara to his home; in his basement, Debtor and Zapara polished uncut opals together. Debtor let Zapara keep some of the opals.

f. Zapara caused Debtor to establish JWL LLC ("JWL"), a Hawai`i Limited Liability Company on April 10, 2006.

g. Debtor and Zapara were members of JWL. As a member-managed Hawaii LLC, each member had voting rights and equal rights in the management and conduct of the company business.

h. JWL was a fictitious conduit set up to provide payroll checks for Zapara's husband Michael to the federal probation department and funnel payments such as from Zapara's business, Happyland, and not for any legitimate business purpose.

i. After forming JWL, Zapara opened an account for JWL at Bank of America (the "JWL Bank"). The JWL monthly bank statements were addressed to Zapara's address; thus, Debtor never saw any JWL bank statements.

4

j. Zapara caused Debtor to pre-sign blank checks drawn on the JWL Bank account. None of the checks were dated or had any payees or amounts filled in.

k. Thereafter, the pre-signed blank checks were filled out and used for purposes unknown to Debtor. Examples of such checks were check #s 7050 & 7055, the latter which was deposited in Zapara's Happyland account.

l. One was a fictitious payroll check (# 7060) used by Zapara's husband, Michael, to certify to the Federal Probation department that he was gainfully employed. Check #7060 did not clear the JWL Bank account.

m. After initially forming JWL and pre-signing blank checks for Zapara, Debtor no longer had any involvement in JWL. Zapara and Debtor held no meetings and had no operating agreement. Zapara filed JWL's Articles of Termination on June 1, 2007. Debtor did not know Zapara had terminated JWL, how Zapara became a member or that she had filed the Articles of Termination.

n. Zapara signed a JWL "Waiver of Notice of and Minutes of Special Meeting of JWL LLC" memorializing a fictitious JWL meeting authorizing the opening of an account with the Bank of Hawai`i.

8. The Trustee attested that "there is no possibility of a 100% percent distribution to unsecured creditors in this case, even if (i) the estate were to prevail

5

upon and collect in full all claims which it has and (ii) the estate had no costs of administration." Declaration of Ronald Kotoshirodo.

9. Debtor was insolvent, as that term is defined in 11 U.S.C. § 101(32), during the entire period from 12/8/05 through 12/8/06. Declaration of Thomas T. Ueno.

## CONCLUSIONS OF LAW

1. This court has jurisdiction over this adversary proceeding, which is a core proceeding in bankruptcy. 28 U.S.C. § 157(b)(2)(I). Venue is proper.

2. Plaintiff's Complaint filed December 5, 2008 (the "Complaint") states three claims for relief. Count I alleges that the Transfers were voidable preferences under 11 U.S.C. § 547. Count II seeks avoidance of fraudulent transfers under 11 U.S.C. §§544 and 548. Count III seeks recovery of the value of the Transfers under 11 U.S.C. § 550(a).

3. As to Count I, 11 U.S.C. § 547 authorizes a trustee in bankruptcy to avoid any transfer of the interest of the debtor in property (i) to or for the benefit of a creditor, (ii) for or on account of an antecedent debt before such transfer was made, (iii) made while the debtor was insolvent, (iv) made between 90 days and one year before the filing of the petition if such creditor at the time of the transfer was an insider, and (v) that enables the creditor to receive more than such creditor would receive if (a) the case were a case under Chapter 7 of 11 U.S.C., (b) the

6

transfer had not been made, and (c) such creditor received payment of such debt to the extent provided by the provisions of the statute.

4. Plaintiff has met the elements of 11 U.S.C. § 547. The Transfers were to or for the benefit of a creditor (i.e., Zapara), for or on account of an antecedent debt before the transfer was made, made within one year before the filing of the Debtor's petition, made while Debtor was insolvent, and enabled Zapara to receive more than she would have received through a Chapter 7 liquidation of Debtor's estate.

5. Section 547(b)(4)(B) provides a one-year preference period for transfers made to or for the benefit of an insider.

6. By her co-membership in JWL LLC, formed on April 10, 2006, Zapara became a statutory *per se* "insider" to Debtor. *Per se* insiders are those set forth in the statute and others "not listed in the statutory definition, but who have a sufficiently close relationship with the debtor that ... conduct is made subject to closer scrutiny than those dealing at arm's length with the debtor." Miller Avenue Professional and Promotional Servs., Inc., v. Brady (In re Enter. Acquisition Partners, Inc.), 319 B.R. 626, 632 (B.A.P. 9th Cir. 2004) (citation omitted). ("Had Congress wanted to extend per se insider status to insiders of insiders, it knew how to do it. Section 101(31)(E) provides that an 'affiliate' of a debtor is an insider, as is an 'insider of an affiliate as if such affiliate were the debtor[.]' Thus, the statute

7

specifically includes insiders of insiders, when that is the intent of Congress."). Evaluating JWL's insiders "as if [JWL] were the debtor", it is clear that Zapara is an insider to JWL by nature of being a member of JWL.

7. JWL is an affiliate of Debtor and Zapara is in insider of it. Under 11 U.S.C. § 101(2)(B), "affiliate," includes a "corporation 20 percent or more of whose outstanding voting securities are directly or indirectly owned, controlled, or held with power to vote, by the debtor....". Id.

8. Under 11 U.S.C. § 101(31)(A)(iv), the term "insider" includes a "corporation of which the debtor is a director, officer, or person in control". The term "corporation" includes any "**unincorporated company or association**":

> **(9)** The term "**corporation**"—
>
> **(A) includes**—
> \* \* \*
> **(iv) unincorporated company or association** . . . .

11 USC § 101(9)(A)(iv) (emphases added).

KRSM Properties, LLC, 318 B.R. 712, 717 n.5 (Bankr. 9th Cir. 2004) noted that the Bankruptcy Code's definition of "corporation" is a term of art that is broader than the ordinary meaning of that word." Hence, an LLC, such as JWL, "fits comfortably within the Bankruptcy Code's definition of 'corporation'". Similarly, after analyzing the nature of an LLC such as JWL, the court in In re Barman, 237 B.R. 342, 348 (Mich. 1999) stated that "a limited liability company ... is

8

U.S. Bankruptcy Court - Hawaii #08-90074 Dkt # 33 Filed 11/17/09 Page 8 of 12

sufficiently analogous to a corporation that for purposes of determining insiders, it is appropriate to consider the similar principles". Under the Barman reasoning, and because an LLC is within the Code's definition of "corporation" under § 101(9)(A), JWL may be treated like a corporation for the purposes of insider analysis, and under 11 U.S.C. § 101(31)(A)(iv) its insiders include "director(s), officer(s) or person(s) in control."

9. As the only members of an LLC, Debtor and Zapara had co-equal rights in the management and conduct of the company's business as a matter of law. HRS § 428-404(a)(1). JWL is an "affiliate" of Debtor because Debtor controlled or held fifty percent of the "voting securities" of JWL (and because an LLC fits within the Code's definition of "corporation" under § 101(9)(A)). Zapara is also an "insider" of JWL and thus an insider the debtor under § 101(31)(E) because she also controlled or held 50% of the "voting securities" of JWL.

10. Zapara was also a non-statutory insider. The term "insider" under § 101(31) is not exhaustive. Miller, 319 B.R. at 631 (under 11 U.S.C. § 102(3), the terms "'includes' and 'including' are not limiting"). Congress intended an "expansive view of the scope of the insider class, suggesting that the statutory definition is not limiting and must be flexibly applied on a case-by-case basis." Wilson v. Huffman (In re Missionary Baptist Foundation of America, Inc.), 712 F.2d 206, 210 (9th Cir. 1983). Non-statutory insiders are those whose professional

9

or business relationship with the debtor "is close enough to gain an advantage attributable simply to affinity rather than to the course of business dealings between the parties." Id. (Citing In re Anderson, 165 B.R. 482, 485 (Bankr.D.Or.1994)). A creditor is an insider if her business or professional relationship with a debtor caused her to "gain an advantage attributable simply to affinity rather than to the course of business dealings between the parties." Id., 319 B.R., at 631.

11. The nature of Zapara's unusual personal and financial relationship with Debtor was such that Zapara comes within this non-statutory definition of "insider". In re Farson, Slip Copy, 2008 WL 913783,*5 (Bankr. D. Idaho 2008)(a "transferee 'is an insider if, as a matter of fact, he exercises such control or influence over the debtor as to render their transaction not arms-length.'").

12. The Zaparas and Debtor have known one another since at least 2000 – six years before JWL was formed. The Zaparas initially saw Debtor to obtain a loan on their residence. In 2004 or 2005, Debtor and Zapara co-invested in a company ("Cash-to-Trade") that preloaded credit cards for people without a bank account. Because Zapara was "short", Debtor invested $250,000. By investing in the company, Michael Zapara was given a job which Debtor testified "would be really good for them and their family". Debtor also "chipped" in with monthly funds to help Michael Zapara with the federal probation department. Debtor

10

invited Zapara to his home; in his basement, Debtor and Zapara polished uncut opals together. Debtor let Zapara keep some of the opals.

13. The later formation of JWL was an extension of their prior close personal and financial relationship. JWL demonstrated she was no ordinary insider, but one in whom the Debtor reposed absolute trust. On April 10, 2006, she engineered an extraordinary amount of control over the Debtor. Debtor's creditors who were not such close friends of Debtor or members of JWL lacked the power to cause Debtor to form an LLC, sign blank checks, and to terminate JWL at will with the stroke of a pen.

14. These facts demonstrate that Zapara's pre-existing relationship gave her a superior advantage outside the course of regular business dealings which was not enjoyed by other creditors. Using the "flexible" and "expansive" approach to the definition of "insider" expressed by Congress, the record demonstrates that Zapara's close personal and financial relationship with Debtor began before the first transfer on December 12, 2005. She enjoyed a special personal and business relationship with Debtor which renders her a non-statutory insider of Debtor and, accordingly, subjects Zapara to the one-year reach-back of § 547(b)(4)(B).

15. Any Conclusion of Law which is a Finding of Fact shall be deemed and considered a Finding of Fact. Any Finding of Fact which is a Conclusion of Law shall be deemed and considered a Conclusion of Law.

11

16. Judgment will be entered in favor of Plaintiff and against Defendant Gina Zapara as follows:

   a. For the principal amount of $165,000 as one-year preferences.

   b. For the principal amount of $5,100 as a one-year and 90-day preference.

   c. For a total judgment in the amount of $170,100.00

17. The foregoing judgment shall bear interest at the federal rate.

DATED: Honolulu, Hawai`i, NOV 16 2009

_____
United States Bankruptcy Judge